# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONA KHATCHER HAMMOUDIAN,<br>        Plaintiff,<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br>        Defendant. | NO. CV 16-1450-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff Sona Khatcher Hammoudian ("Plaintiff") filed a Complaint on March 2, 2016, seeking review of the denial of her application for Supplemental Security Income ("SSI") disability benefits. (Dkt. No 1.) On March 30 and April 10, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12.) On August 1, 2016, Defendant filed an Answer to the Complaint (Dkt. No. 17) and a Certified Administrative Record ("A.R.") (Dkt. No. 18). On

---

[1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this action.

February 16, 2017, the parties field a Joint Submission ("Joint Sub."). (Dkt. No. 25.) On March 17, 2017, the Court requested supplemental briefs from the parties on the impact, if any, of the illegibility of the treating psychiatrist's treatment notes. (Dkt. No. 26.) On April 7, 2017, the parties filed their supplemental briefs. (Dkt. Nos. 27, 28.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff was 49 years old on the date of her application, and thus, under Social Security agency guidelines, defined as a "younger individual."[2] (A.R. 30; *see* 20 CFR § 416.963.) Plaintiff alleged disability due to arthritis in shoulder, neck, fingers; back pain (slipped disc); arthritis; idiopathic painful polytentopathy; bilateral carpal tunnel and major depression with psychosis. (A.R.84.) Plaintiff first filed an application for SSI on September 10, 2007, alleging disability beginning January 1, 2006. (A.R. 61, 72.) The application was initially denied on January 15, 2008 and again on reconsideration. (A.R. 72.) On November 18, 2008, Plaintiff filed a written request for hearing. (*Id.*) A hearing was scheduled for October 1, 2009 before Administrative Law Judge Alexander Weir, III ("ALJ Weir"), but Plaintiff did not appear because of her apparent confusion about the location of the hearing. (*Id.*) On December 11, 2009, ALJ Weir issued an adverse decision finding plaintiff was not disabled and had not been under a disability since September 10, 2007. (A.R. 83.) Plaintiff did not appeal that decision. (*See* A.R. 19 ("There is no evidence that the [Plaintiff] requested further review of the hearing decision and, therefore, that decision is administratively final.").)

On August 23, 2012, Plaintiff filed a second application for SSI, alleging disability beginning January 1, 2008. (A.R. 19.) Her claim was denied on January 30, 2013 (A.R.

---

[2] Plaintiff was born on May 1, 1963. (A.R. 30, 84.)

2

110-14) and upon reconsideration on May 7, 2013 (A.R. 119-25). Plaintiff filed a written request for a hearing on June 5, 2013. (A.R. 128-30.) On July 8, 2014, Plaintiff, represented by counsel and with the assistance of an Armenian interpreter, testified before Administrative Law Judge James D. Goodman ("ALJ Goodman"). (A.R. 38-58.) ALJ Goodman denied Plaintiff's claim on August 14, 2014, concluding that Plaintiff had not been under a disability within the meaning of the Social Security Act since August 23, 2012. (A.R. 16-35.) Plaintiff requested review of the ALJ's decision by the Social Security Appeals Council, which denied review on January 19, 2016. (A.R. 1-7.) Plaintiff then timely commenced this civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

In considering Plaintiff's 2012 application for SSI, the ALJ first reviewed the procedural history of Plaintiff's 2007 application and ALJ Weir's adverse decision. (A.R. 19.) Citing *Chavez v. Brown*, 844 F.2d 691 (9th Cir. 1988), and Acquiescence Rule 97-4(9), ALJ Goodman observed that "when adjudicating a subsequent claim involving an unadjudicated period, where the claim arises under the same title of the Social Security Act as a prior claim on which there has been a final decision . . . that the claimant is not disabled, there is a presumption of nondisability arising from the previous [ALJ's] decision." (A.R. 19.) To overcome the presumption, the claimant must provide "changed circumstances" that indicate a "greater disability established by a new and material evidence." (*Id.*) Further, in *Chavez,* the Ninth Circuit held that "principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez*, 844 F.2d at 693.

ALJ Goodman, after applying the *Chavez* analysis, determined that Plaintiff failed to rebut the presumption of continuing non-disability and concluded that the evidence "submitted after the prior decision fails to show the advent of any new impairments." (A.R.

3

20.) Nevertheless, ALJ Goodman determined that, because of the passage of time since the 2009 decision, the evidence "supports restricting [Plaintiff] to light exertional work, rather than medium exertional work, as provided by ALJ Weir." (*Id.*) ALJ Goodman also accepted ALJ Weir's finding that Plaintiff is able to perform her past relevant work, although ALJ Goodman noted that Plaintiff had changed age categories from a younger individual to a person "closely approaching advanced age." (*Id.*)

After addressing the issues related to the prior nondisability determination, ALJ Goodman applied the five step sequential evaluation process outlined in 20 C.F.R § 416.920(a). At step one, he determined that Plaintiff had not engaged in substantial gainful activity since August 23, 2012, the date of her application. (A.R. 23.)

At step two, the ALJ determined that Plaintiff has the following severe impairments: "a history of right carpal tunnel syndrome and status post left hand carpal tunnel syndrome release procedure." (*Id.*)[3] ALJ Goodman noted that Plaintiff has a history of degenerative disc disease of the lumbar spine, but did not find this "condition of ill-being to be severe" because it "does not cause a significant limitation in the [Plaintiff's] ability to perform basic work activities." (A.R. 23.) The ALJ also considered whether Plaintiff's obesity was implicitly raised but noted that "no medical source has stated that obesity caused or exacerbated [Plaintiff's] impairments or symptoms" and found no evidence that obesity "elevates her other condition to the level of severity." (A.R. 24.) Finally, ALJ Goodman found that Plaintiff's medically determinable mental impairment was non-severe, because it caused no more than "mild" limitation in any of the three functional areas and Plaintiff had no episodes of decompensation. (A.R. 26.)

---

[3] The ALJ referred to Plaintiff's conditions as "medically determrnable [sic] conditions of ill-being." (*See* A.R. 23.) However, because he concluded that "the above conditions of ill-being cause significant limitation in the [Plaintiff's] ability to perform basic work activities," they meet the definition of severe within agency regulations. *See* 20 C.F.R. 416.920(c).

4

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (A.R. 26.) The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work. (A.R. 27.)

At step four, the ALJ determined that Plaintiff had past relevant work as a cook, which Plaintiff self-reported as performing at a light to sedentary level of exertion. (A.R. 30.) She also had prior work as a housekeeper, performed at the medium level of exertion. (*Id.*) The ALJ found, however, that the "record is more consistent with restricting [Plaintiff] to performing light exertional work." (A.R. 28.) At step five, the ALJ concluded that Plaintiff is capable of performing her past relevant work as a cook, but also made alternative findings for step five that 'there are other jobs in the national economy that she is also able to perform." (A.R. 30-31.) Accordingly, the ALJ found Plaintiff had not been under disability since August 23, 2012, the date she filed her application. (A.R. 31.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

**I.    Disputed Issues**

Plaintiff raises four issues:

(1) Whether the ALJ properly evaluated the evidence in finding that Plaintiff's mental health impairment is non-severe;

(2) Whether the ALJ properly evaluated the opinion of treating physician Dr. Shovek Boyadjian;

(3) Whether the ALJ properly found that Plaintiff failed to rebut the presumption of continuing non-disability; and

(4) Whether the ALJ properly assessed Plaintiff's testimony.

(Joint Sub. at 5.)

## II. Substantial Evidence Does not Support the ALJ's Finding that Plaintiff's Mental Health Impairment is Non-Severe.

Plaintiff contends that the ALJ did not properly consider Dr. Tigran Gevorkian's opinion and mental health treatment notes in concluding that Plaintiff's mental health impairment is non-severe and, further, that the ALJ's finding of a non-severe mental impairment is not supported by substantial evidence. (Joint Sub. at 4-11.) Specifically, Plaintiff argues that the ALJ "isolate[d] portions of the records" and in so doing failed to properly consider the treatment notes treating psychiatrist, Dr. Gevorkian. (*Id*. at 6-9.) Defendant responds that the ALJ properly discounted Dr. Gevorkian's "extreme opinion" and the ALJ's finding of a non-severe mental impairment is adequately supported by the record. (*Id*. at 11-15.)

For the reasons discussed below, this Court finds that the ALJ erred at step two and his determination that Plaintiff's mental impairment is non-severe is not supported by substantial evidence.

### A. Applicable Law

A medical diagnosis by itself does not make an impairment qualify as "severe" for the purposes of step two of the sequential analysis. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Rather, agency regulations define a severe impairment as an impairment

7

that significantly limits a claimant's "ability to do basic work activities." 20 C.F.R. § 416.921. "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686-97 (9th Cir. 2005) (internal citation omitted); *see also* Soc. Sec. Ruling 85-28 ("a claim may be denied at step two only if . . . a finding [that] the relevant impairments are not medically severe] is clearly established by medical evidence"). The regulations direct the ALJ to find a mental impairment severe when a claimant suffers moderate limitations in activities of daily living, social functioning, or concentration, persistence, or pace, or has "more than a minimal limitation on [her] ability to do basic work activities." 20 C.F.R. § 416.920a(c)(4). The inquiry at step two of whether an impairment is "severe" is "a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

**B. Analysis**

Here, the ALJ found that Plaintiff had "a medically determinable mental condition of ill-being of major depression with psychosis" but concluded that the condition "does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore non-severe." (A.R. 24.) The ALJ based the conclusion on the findings of consultative examiner Dr. Edward Ritvo. (*Id.*) The ALJ's finding is consistent with the 2009 finding of ALJ Weir, who found that Plaintiff had mental depression, but also determined that "this is not a severe impairment." (*See* A.R. 76.)

**1. Legal Standard for Evaluating a Treating Physician's Opinions**

A treating physician's opinions are generally entitled to "substantial weight." *Bray v Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). The ALJ must articulate a "substantive basis" for

8

rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In particular, the ALJ must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Even when a treating physician's opinion is contradicted by evidence in the record, in order to disregard the treating physician's opinion, the ALJ must present "specific and legitimate reasons" supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The ALJ need not accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). "Items in the record that may not support the physician's opinions include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes and the claimant's daily activities." *Bayliss v. Barnhart* 427 F.3d 1211 (9th Cir. 2005).

### 2. Consulting Examiner Dr. Ritvo's Opinion

Dr. Ritvo conducted a Complete Psychiatric Evaluation of Plaintiff on January 10, 2013. (A.R. 368-72.) Dr. Ritvo did not review any medical records as part of his evaluation, other than a letter that Plaintiff brought to her appointment. (A.R. 368.) Plaintiff's chief complaint was "I feel sad and depressed sometimes," and she showed Dr. Ritvo a letter showing that her treating psychiatrist, Dr. Gevorkian had prescribed Abilify, Xanax, and Trazodone medications. (A.R. 368.)

Dr. Ritvo's mental status examination indicated that Plaintiff 'makes good eye contact" and had "no obvious psychomotor agitation or retardation;" she was "coherent and organization with "no tangentiality or loosening of associations." (A.R. 370.) She showed no "bizarre or psychotic thought content and denied "recent auditory or visual

9

hallucinations," she demonstrated no memory deficiency, with the ability to recall "three items immediately and three items after five minutes," her insight and judgment appeared to be intact. (*Id.* 371.) Based on his examination, Dr. Ritvo concluded that Plaintiff "does not present signs or symptoms that warrant the diagnosis of a major psychiatric disorder on Axis I" and he rated her psychiatric prognosis as fair. (*Id.* 372.) In addition, he opined that Plaintiff has no impairment in her ability to: understand, remember or complete simple or complex commands; interact appropriately with supervisors, coworkers or the public; comply with job rules such as safety and attendance; respond to change in the normal workplace setting; and maintain persistence and pace in a normal workplace setting. (*Id.* 372.)

The ALJ gave Dr. Ritvo's opinion great weight. (A.R. 24.) The ALJ found Dr. Ritvo's finding were consistent with the medical treatment records, which reflect that Plaintiff was prescribed medications for depression and nervousness in 2012-2014, but contained "no evidence that Plaintiff received counseling or any therapeutic intervention other than medications to treat her mental impairment." (*See* A.R. 25.) The ALJ credited Dr. Ritvo's opinion over those of Dr. Gevorkian, Plaintiff's treating psychiatrist.

### 3. Treating Psychiatrist Dr. Gevorkian's Opinion

Dr. Gevorkian diagnosed Plaintiff with depression and treated Plaintiff over several years, beginning in 2008 and continuing until 2014. (*See* A.R. 466-500; A.R. 489-90.). Dr. Gevorkian submitted a Mental Residual Function Capacity Questionnaire dated May 21, 2014, in which he opined that Plaintiff suffered from major depression and listed her prognosis as "guarded." (A.R. 495-500.) Dr. Gevorkian opined that Plaintiff's mental abilities precluded her from understanding and/or remembering locations, work-like procedures, very short, simple instructions or detailed instructions for 15% or more of an 8-hour workday. (*Id.* at 497.) He assessed that with respect to her abilities of sustained

concentration and memory, Plaintiff was precluded for 10% or more of an 8-hour workday from carrying out short and simple instructions or sustaining an ordinary routine without special supervision. (*Id.*) For almost every other mental ability, activity of social interaction and adaptation, Dr. Gevorkian checked the box indicating that Plaintiff would be precluded from performing these activities for 15% or more of an 8-hour work day. (*Id.* at 497-98.)

In crediting the opinion of consulting examiner Dr. Ritvo over the opinion of Dr. Gevorkian, the ALJ found that Dr. Gevorkian's assessment of extreme limitation was not supported by Plaintiff's treating records. (A.R. 25.) The ALJ supported this finding by explaining that treatment notes from a visit to Valley Presbyterian Hospital in August 2012, indicate "Patient does not appear anxious or depressed" and Plaintiff showed "normal orientation and judgment." (A.R. 351.) A June 2013 examination showed her mental status as "alert oriented and interactive." (A.R. 412.) Notes from an examination in December 2013, reflect a history of depression, but indicate her mental status was alert, fully oriented, with appropriate affect, attention, language and memory function to conversation. (A.R. 408.)

The ALJ noted that the record includes other treatment notes from Dr. Gevorkian, including ones from May and December 2012, January April, July and December 2013, as well as April 2014. (A.R. 25.) However, the ALJ stated that "these largely illegible records merely reference the [Plaintiff's] medications." (*Id.*) The ALJ also noted that these records "include no indication of the [Plaintiff's] receiving counseling or therapeutic intervention (aside from medication) to treat her mental impairment." (*Id.*) Hence, the ALJ concluded that the record did not contain sufficient diagnostic or objective findings to support Dr. Gevorkian's assessment of Plaintiff's mental impairment. (*Id.*)

//
//

### 4. The ALJ Erred at Step Two

The ALJ determined that Plaintiff's mental condition of "major depression with psychosis" did not cause more than minimal limitation in her ability to perform basic mental work activities. (A.R. 24.) Despite noting that Plaintiff was prescribed strong antidepressant medications such Celexa and Trazodone for her mental impairment over several years, the ALJ determined that the medical record did not support finding a severe mental condition. (A.R. 25.) In making this determination, the ALJ considered the four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. (*Id*.) The ALJ found no record evidence that Plaintiff has experienced any episodes of decompensation, but concluded that Plaintiff had "no more than mild limitation" in each of the other three functional areas. (*Id.*)

The record demonstrates that Plaintiff has been under psychiatric treatment for "major depression" since at least October 2008. (*Se*e A.R. 496.) Nonetheless, the ALJ concluded at step two that Plaintiff's mental impairment is non-severe, while acknowledging that Dr. Gevorkian's treatment notes were "largely illegible." (A.R. 25.) Based on its own independent examination of the record, the Court concurs that Dr. Gevorkian's progress notes documenting Plaintiff's ongoing treatment for depression and anxiety symptoms, are indeed largely illegible and the contents almost impossible to decipher. (*See e.g.,* A.R. 467-93.) However, the fact that these notes are illegible begs the question of whether these notes, rather than containing inadequate evidence of diagnoses and treatment concerning Plaintiff's major depression, may in fact contain information inconsistent with the ALJ's non-severe determination that the ALJ overlooked.

The Ninth Circuit has held that a finding that a medically determined impairment is non-severe must be "*clearly established by medical evidence*." *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis added). Here, a substantial part of the treating

medical evidence, on which the ALJ relied in making the determination that Plaintiff's long history of depression was non-severe, could not be properly evaluated because it was illegible. *See e.g., Galloway v. Astrue,* 2009 WL 1740647, *4 No. EDCV 08-1248(CW) June 17, 2009 (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975).)[4]

In response to the Court's request for supplemental briefing on the impact, if any, of the illegible treating records, Plaintiff points to several decisions from courts of this circuit finding that the combination of illegible records from a treating physician with an ALJ's finding that the treating physician's opinion was unsupported by objective medical finding triggered the ALJ's duty to further develop the record to ascertain the basis of the treating physician's findings. (*See* Plaintiff's Supplemental Brief ("Pl. Supp. Br.") at 2-3, Dkt. No. 28 (citing *Galloway v. Astrue*, No. EDCV 08-1248 (CW), 2009 WL 1740647 (C.D. Cal. June 17, 2009); *Smith v. Astrue*, No. ED CV 08-1131, 2009 WL 1653032 (C.D. June 10, 2009); *Williams v. Astrue*, No. ED CV 08-549, 2009 WL 431432 (C.D. Cal. Feb. 1, 2010); and *Carlson v. Colvin*, No. 2:15-CV-01085, 2016 WL 2753913 (W.D. WA April 20, 2016).) Moreover, as Plaintiff emphasizes, these decisions rely upon analyses by the Ninth and Second Circuit that establish that an ALJ's duty to conduct an appropriate inquiry is triggered by ambiguous evidence or an ALJ's own finding that the records is inadequate for proper evaluation of the evidence. (*See* Pl. Supp. Br. at 3 (citing *Tonapetyan v. Halter*, 242, F.3d 1144, 1150 (9th Cir. 2001); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2nd Cir. 1975).)

Defendant, in her supplemental brief, argues that the ALJ adequately fulfilled his responsibility to develop the record by obtaining a consultative examination, giving Plaintiff opportunity to submit evidence, and holding hearings where Plaintiff accepted the submitted

---

[4] In his 2009 adverse decision, ALJ Weir also found Plaintiff's mental impairment non-severe and noted that Dr. Gevorkian's notes were "[h]ighly illegible." (*See* A.R. 78.) While ALJ Weir discounted Dr. Gevorkian's statements regarding Plaintiff's limitations resulting from a "major depressive disorder," ALJ Weir also noted, that at the time of his decision, Dr. Gevorkian "[had] not had a significant period of treatment of the [Plaintiff]." (*Id.*)

13

evidence and "did not request further evidentiary action." (Defendant's Supplemental Brief ("Def. Supp. Br.") at 1, Dkt. No. 27.) Defendant also points out that Plaintiff's attorney did not object to the evidence at the hearing and did not add any evidence. (*Id.*) Defendant argues that the agency fulfilled its obligation to overcome the ambiguous evidence by paying for "two consultative examinations of Plaintiff which more than adequately makes up for the illegibility of any submitted records." (*Id.* at 2.)[5] Defendant's arguments are unpersuasive.

Defendant appears to concede that the illegible medical records of treating psychiatrist, Dr. Gevorkian, rendered the treatment records ambiguous. (*See* e.g., Def. Supp. Br. at 2 ("While the agency cannot make illegible treating records legible, the regulations indicate what the agency can do to develop the record when the medical record produces ambiguous evidence.").) However, Defendant does not explain how the ALJ nonetheless relied upon the illegible records to determine that they "merely reference the claimant's medications" and did not adequately document treatment of her mental impairment. (*See* A.R. 25.) The ALJ rejected Dr. Gevorkian's by pointing to portions of the notes that he could decipher as supporting a finding of a non-severe mental condition. (*Id.*) Plaintiff points out that some legible portions of the treatment notes appear to support Dr. Gevorkian's opinions. (Pl. Supp. Br. at 4.)

The Ninth Circuit has found reversible error where an ALJ "selectively relies on some entries in a claimant's record and ignores others" that indicate severe impairment. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). Here, there is no way to know exactly what was contained in much of the treating psychiatrist's records and the ALJ offers no

---

[5] The Court notes that the record indicates that two consultative examiners offered opinions in this case, but only one consultative examiner, Dr. Ritvo, a psychiatrist, opined as to Plaintiff's medically determinable *mental* conditions. (*See* A.R. 24; A.R. 368-73.) The other consultative examiner, Dr. Sohail Afra, an internist, conducted an internal medicine evaluation and opined regarding Plaintiff's physical abilities and/or limitations. (*See* A.R. 27; and A.R. 374-80.)

14

explanation for why he cherry picks certain legible information from those records and discounts the contents of indecipherable portions records. *See Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001) (finding reversible error for ALJ to "selectively focus on aspects of [physician's] report which tend to suggest non-disability"). While Plaintiff cites several decisions that have found reversible error in circumstances such as here involving illegible treatment records, Defendant does not discuss, cite, or attempt to distinguish any of these authorities.[6]

Lastly, to the extent the ALJ discounted the treating psychiatrist's opinions based on the ALJ's assessment of what the treatment notes purportedly did not contain, even though the ALJ acknowledges that the records are largely illegible, the ALJ's reasons for rejecting Dr. Gevorkian's opinions are neither clear and convincing (*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (when rejecting treating physician's uncontradicted opinion), nor specific and legitimate (*Bayliss v. Barnhart*, 427, F.3d 1211, 1216 (9th Cir. 2005) (if treating opinion is contradicted).

### 5. The ALJ's Error is Not Harmless.

"Even when the ALJ commits legal error [a federal court will] uphold the decision where that error is harmless*." Treichler v. Comm'r of Social Sec. Admin,* 775 F.3d 1090, 1099 (9th Cir. 2014). An error is harmless if it is "inconsequential to the ultimate nondisability determination" of if the "agency's path can be reasonably discerned." *Brown-Hunter*, 806 F.3d at 492.

---

[6] The Court directed the parties to file separate supplemental briefing on the same date and did not ask for an opening brief by one party followed by a responsive brief from the other. (*See* Dkt. No. 26.) Still, it is notable that Defendant does not address these relevant and readily accessible authorities.

1 | Defendant maintains that the RFC limitation to unskilled work renders harmless any error in the ALJ's finding of non-severe mental impairment. (Joint Sub. at 15.) Specifically, Defendant argues even "moderate restrictions at step 2 . . . may translate to an RFC that allows for unskilled jobs, due to limited mental requirements of such work." (*Id.*)

Plaintiff argues that the ALJ's error not harmless because the ALJ used the illegibility of the treatment notes as a basis to conclude that Dr. Gevorkian's notes contain no diagnostic or objective finding to support Dr. Gevorkian's opinions regarding Plaintiff's mental limitations. (Pl. Supp. Br. at 4.) In addition, Plaintiff contends that "a finding of a severe mental impairment does not equate to an unskilled work limitation" as Defendant posits. (Joint Sub. at 16.)

The Court finds that the ALJ's error was not harmless. Because the ALJ erred at Step 2 in determining that Plaintiff's mental impairments were non-severe, he failed to factor any mental impairments into the analysis of Plaintiff's capacity to perform other jobs and did not include possible mental impairments in the hypotheticals posed to the VE. *See DeLorme v. Sullivan*, 924 F.2d 941, 850 (9th Cir. 1991) ("If the hypothetical does not reflect all the claimant's limitations . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") The ALJ's error also impacts whether the ALJ properly found that Plaintiff failed to rebut the presumption of continuing non-disability, Plaintiff's third disputed issue in this action.

Accordingly, this Court finds that the ALJ's finding of non-severe mental impairment is not supported by substantial evidence and the error was not harmless.

\\
\\
\\
\\

16

**C.	The ALJ Did Not Err in Considering the Treating Physician's Opinion**

Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of treating physician, Shovek Boyadjian, and giving greater weight to the opinions of consultative medical examiner and internist, Sohail K. Afra. (Joint Sub. at 16-23.) As noted, the ALJ may reject a treating physician's uncontradicted opinion only by providing clear and convincing reasons supported substantial evidence. *Lester*, 81 F.3d at 830. When a treating physician's opinion is contradicted by evidence in the record, the ALJ can disregard that treating opinion only by articulating specific and legitimate reasons supported by substantial evidence in the record for doing so. *Murray*, 722 F.2d at 502.

For the reasons discussed below, the Court finds that the ALJ's consideration of Dr. Boyadjian's opinion concerning Plaintiff's physical limitations is without legal error.

**1.	Dr. Boyadjian's Opinions**

Dr. Shovek Boyadjian submitted a May 2014 hand and wrist medical statement relating to Plaintiff's treatment for carpal tunnel syndrome. (A.R. 462-64.) Dr. Boyadjian noted current diagnoses of "neuropathy of hands" and opined that Plaintiff could never perform any fine or gross manipulation with either her left or right hand, an inability for Plaintiff to prepare simple meal, feed herself, take care of personal hygiene, "inability to sort and handle papers or files or inability to place files in a file cabinet at or above waist level." (A.R. 463.) The treating physician opined that Plaintiff had severe chronic pain and numbness with frequent exacerbations" and she was "becoming non functional relying on others for care." (*Id.* 464.) The ALJ also considered treatment notes from Dr. Boyadjian dating from January and April 2014, January, March, April and June 2013, and November 2012. (A.R. 28.) Dr. Boyadjian opined that Plaintiff would be incapable of even "low stress" work, cannot sit more than five minutes at any one time, cannot stand more than five

minutes at any one time before needing to sit down, walk around, or lie down, can never lift and/or carry even less than 10 pounds, and could never twist, stoop/bend, crouch, climb ladders or stairs. (A.R. 451-52; *see also* A.R. 455-60.)

### 2. Dr. Afra's Opinions

The ALJ based her RFC on the January 13 opinion of consultative examiner and internist, Dr. Sohail Afra. (A.R. 27.) In contrast with Dr. Boyadjian, Dr. Afra, who conducted a complete physical examination of Plaintiff, opined that Plaintiff could perform light exertional work. (A.R. 374-80.) Because the treating doctor's opinion is contradicted by the consulting physician's opinion, the ALJ was required to present "specific and legitimate reasons" supported by substantial evidence in the record when giving greater weight to the consulting examiner's opinions over those of treating physician Dr. Boyadjian. *Murray,* 722 F.2d at 502.

The ALJ satisfied that requirement by explaining that Dr. Boyadjian's treatment records reflected largely normal results for Plaintiff. (*See* A.R. 28.) The ALJ explained that while a June 2009 motor nerve conduction study showed bilateral carpal tunnel syndrome mild on her left and moderate on her right (*see* A.R. 242), a February 2013 study showed normal results and no evidence of carpal tunnel syndrome in her right hand. Records from June 2013 indicate that Plaintiff had "normal strength, tone, bulk, intact cranial nerves, intact sensory functioning, normal gait and moral reflexes. (AR. 413.) The ALJ discounted Dr. Boyadjian's very restrictive assessment of Plaintiff's exertional limitations, explaining that "the record as a whole includes no diagnostic or objective evidence to support [Dr. Boyadjian's] evaluations." (A.R. 28.) The ALJ explained that "Dr. Boyadjian merely completed pre-drafted forms and he provided no explanation for his assessments." (*Id.*) Consequently, the ALJ gave greater weight to the opinions of consulting examiner, Dr. Afra, finding it "consistent with the record as a whole." (A.R. 27.) Based on its review of the

18

record evidence, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for giving greater weight to Dr. Afra's opinions over those of Dr. Boyadjian.[7]

Accordingly, the ALJ's evaluation of Dr. Boyadjian's opinion is free of legal error.

### D. Remand For Further Administrative Proceedings is Warranted

Plaintiff urges the Court to reverse the agency's adverse decision and order the payment of benefits. (Joint Sub. at 48.) In certain, narrow circumstances, the Ninth Circuit permits courts to credit evidence as "true" and award benefits if it finds that the agency did not properly evaluate that evidence in the first instance. *Treichler*, 775 F.3d at 1099-1102. In this case, however, further administrative proceedings are necessary to resolve ambiguities concerning Dr. Gevorkian's treatment records that may impact the determination regarding Plaintiff's mental impairment(s) at Step 2. *Id*. at 1101. Thus, an immediate award of benefits is not appropriate in this case. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Further, it is not clear in this case that re-consideration of the opinions of treating psychiatrist, Dr. Gevorkian, would conclusively render Plaintiff disabled in light of the remaining evidence in the record.

Consequently, remand is warranted to resolve the ambiguities concerning Dr. Gevorkian's opinions. The ALJ must provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Gevorkian's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Further, to the extent that the record is ambiguous or inadequate to allow for a proper evaluation of the medical opinions in evidence, the ALJ has

---

[7] Plaintiff's Adult Function Report, completed by her niece, indicates that Plaintiff prepares simple meals 3-4 times a week, washes dishes, and goes outside daily, which is inconsistent with Dr. Boyadjian's assessment that Plaintiff cannot feed herself or prepare meals or care for personal hygiene. (*See* A.R. 205-13.)

a duty to conduct appropriate inquiry, such as soliciting additional evidence or re-contacting the medical source for clarification. *See Tonapetyan*, 242 F.3d at 1150.

Because this matter must be remanded to the ALJ for reconsideration of the treating psychiatrist's opinions, the Court declines to reach the merits at this juncture of Plaintiff's remaining arguments concerning the whether the ALJ properly determined that Plaintiff did not overcome the presumption of continuing nondisability and whether the ALJ properly evaluated Plaintiff's testimony. Nevertheless, on remand, the ALJ should ensure that his analysis of these issues complies with the applicable regulations and legal standards.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED and remanded for further administrative proceedings consistent with this Order.

LET JUDGEMENT BE ENTERED ACCORDINGLY.

April 14, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE